IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

RAY BRANDON,

Plaintiff,

v. Case No. 1:25-cv-01212-JDB-jay

ROBERT DUCK, *et al.*,

Defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION,
GRANTING MOTION TO DISMISS,
DENYING REMAINING PENDING MOTIONS AS MOOT,
AND
DISMISSING CASE

The pro se complaint of the Plaintiff, Ray Brandon, arises from alleged attempts by the Defendants, Tennessee Department of Human Services ("DHS") Director of Operations Robert Duck and DHS's Child Support Services, to collect child support payments and enforce those obligations.[1] The September 4, 2025, pleading alleges that the Defendants violated the First, Fourth, Fifth, Thirteenth, and Fourteenth Amendments to the United States Constitution; the Fair Debt Collection Practices Act ("FDCPA"), which has since been withdrawn;[2] and 31 U.S.C. §

[1]This is the second action Plaintiff, also known as Ray Brandon Harvison, has filed seeking relief from his child support obligations. The complaint in that case, which also named Child Support Services and Duck, among others, as defendants, was dismissed, and the dismissal was affirmed on appeal. *See Harvison v. Little*, Case No. 1:22-cv-01103-JDB-jay, 2023 WL 3147905 (W.D. Tenn. Apr. 28, 2023), *aff'd*, No. 23-5516, 2024 WL 2806329 (6th Cir. Jan. 24, 2024), *reh'g denied*, 2024 WL 2807134 (6th Cir. Feb. 20, 2024).

[2]Plaintiff states in his objections that his FDCPA claim is "completely legally dead," citing his previous notification to the Court that "[u]pon further review, Plaintiff acknowledges that [the] FDCPA claim is inapplicable to the present dispute and respectfully withdraws it." (Docket Entry 58 at PageID 593.)

3720D.[3] Finally, the complaint asserts several state-law claims. (*See* Docket Entry ("D.E.") 1.) Plaintiff seeks relief in the form of a declaration that his constitutional rights have been violated, injunctive relief prohibiting collection activities, a finding "disestablish[ing] paternity," closure of his DHS cases, removal of related information from credit reporting agencies, a refund of moneys previously paid for child support obligations, and an award of compensatory and punitive damages. (*Id.* at PageID 23-24.) Brandon subsequently voluntarily dismissed his claims against Child Support Services under Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, (D.E. 17, 23; *see* D.E. 58 at PageID 593 (describing DHS as a "legally dead [party] in this action")), leaving Duck as the sole Defendant.

The matter was referred to the United States magistrate judge for all pretrial proceedings in accordance with Administrative Order 2013-05. Numerous motions have been filed, including a motion to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1), (2), (5), and (6) (D.E. 10); a motion for sanctions against Duck for continuing efforts to collect moneys owed (D.E. 26); and four motions to amend the complaint (D.E. 13, 21, 28, 43). On August 21, 2026, Judge Jon A. York entered a report and recommendation (the "R&R") recommending that the motion to dismiss be granted on jurisdictional grounds and the remaining pending motions denied. (D.E. 57.) Plaintiff has filed timely objections to the R&R (D.E. 58), to which Duck has responded (D.E. 61), and Brandon has replied (D.E. 64).

Congress enacted 28 U.S.C. § 636 to "relieve some of the burden on the federal courts by permitting the assignment of certain district court duties to magistrate[ judges]." *United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001) (citing *Gomez v. United States*, 490 U.S. 858, 869-70

[3]Section 3720D permits wage garnishment to collect funds owed to the United States. This claim has been leveled against Duck only.

(1989)). Upon the filing of objections to a report and recommendation entered by a magistrate judge, the district judge is to "determine de novo any part of the magistrate judge's disposition that has been properly objected to," and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1), LR 72.1(g)(2). "Only 'specific written objections' to the [m]agistrate [j]udge's proposed factual findings and legal conclusions are considered 'proper' for the district court's consideration." *Tulis v. Orange*, 686 F. Supp. 3d 701, 705 (M.D. Tenn. 2023), *aff'd*, No. 23-5804, 2024 WL 4117021 (6th Cir. Aug. 19, 2024). With respect to matters to which there has been no proper objection, the district court need not engage in review "under a de novo or any other standard." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Where there is no specific objection, the report and recommendation should be adopted by the district court. *Id.* at 151; *Brown v. Bd. of Educ. of Shelby Cnty. Sch.*, 47 F. Supp. 3d 665, 674 (W.D. Tenn. 2014).

Plaintiff objects to the R&R for numerous reasons, only one of which the Court need address here as it is dispositive. "Federal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), possessing "only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto," *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). The question of jurisdiction is a threshold issue that must be addressed prior to any consideration of the merits. *White's Landing Fisheries, Inc. v. Ohio Dep't of Nat. Res.*, 174 F.4th 493, 499 (6th Cir. 2026); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). A party invoking federal jurisdiction bears the burden of proving it. *White's Landing Fisheries*, 174 F.4th at 499. The magistrate judge concluded, among other things,

that subject-matter jurisdiction is lacking pursuant to the domestic relations exception to federal jurisdiction. Plaintiff objects to this finding on the grounds that the exception does not apply.

"Generally, federal courts have no jurisdiction over domestic relations matters." *Danforth v. Callabrezze*, 76 F. App'x 615, 616 (6th Cir. 2003) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)). The domestic relations exception is a "judicially created doctrine" and exists as a "matter of statutory interpretation," *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 794 (6th Cir. 2015) (citing *Marshall v. Marshall*, 547 U.S. 293, 299 (2006) & *Ankenbrandt*, 504 U.S. at 700), dating back to the United States Supreme Court's observation that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States," *Ex Parte Burrus*, 136 U.S. 586, 593-94 (1890). The exception is a narrow one, applying only when "a plaintiff positively sues in federal court for divorce, alimony, or child custody, or seeks to modify or interpret an existing divorce, alimony, of child-custody decree," *Johnson v. Antkoviak*, 171 F.4th 819, 821 (6th Cir. 2026) (per curiam) (quoting *Alexander v. Rosen*, 804 F.3d 1203, 1205 (6th Cir. 2015)), as "state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees," *Chevalier*, 803 F.3d at 794 (quoting *Ankenbrandt*, 504 U.S. at 703-04). Courts in this circuit have also applied the exception to cases challenging the state court's enforceability of domestic orders. *See Thompson v. Swenski*, Case No. 1:26-CV-00652, 2026 WL 806779, at **1-2 (N.D. Ohio Mar. 4, 2026) (finding the exception applied where, even though plaintiff alleged constitutional violations, he primarily sought to "restrict the state court's authority and the enforcement of its orders"); *Bass v. Bass*, No. 1:23-cv-1215-STA-jay, 2024 WL 1887066, at *2 (W.D. Tenn. Apr. 30, 2024) (exception applied where plaintiff sought

enforcement of state-court domestic relations order); *McGuire v. Tenn.*, No. 3:22-cv-00275, 2022 WL 2794281, at *1 (M.D. Tenn. July 14, 2022) ("The enforcement of child support falls squarely under the domestic relations exception.").

The exception does not apply "when a plaintiff asserts federal claims seeking to vindicate federal statutory or constitutional rights in the context of a domestic-relations dispute." *Johnson*, 171 F.4th at 821-22 (quoting *Edelstein v. Flottman*, No. 24-3156, 2025 WL 609487, at *2 (6th Cir. Jan. 10, 2025)) (internal quotation marks omitted). However, "[a]lthough [the] domestic relations exception to federal jurisdiction does not apply to a civil action that merely has domestic relations overtones, federal courts lack jurisdiction where the action is a mere pretense and the suit is actually concerned with domestic relations issues." *Danforth*, 76 F. App'x at 616 (internal citation omitted). The Sixth Circuit has observed that courts in this circuit have applied the exception to suits brought under federal-question and diversity jurisdiction, *Edelstein*, 2025 WL 609487, at *2, both of which have been invoked here.

Brandon argues that he has never been married, is not the father of the Children, has no domestic decree, and does not seek to modify a custody schedule. The mere fact that his claims arise from the domestic relations context, he argues, does not divest the Court's ability to hear his claims.

However, this case has more than "domestic relations overtones." The docket contains certain juvenile court orders, signed by a judge and file-stamped, relevant to the undersigned's inquiry.[4] In an order entered June 18, 2010, Madison County, Tennessee, Juvenile Court Judge Christy R. Little declared Plaintiff to be the natural father of P.C. and directed him to pay monthly child support to the mother of the child. (D.E. 11-1.) In a final order of parentage issued April 26,

[4]The Court may take judicial notice of state court records. *See* Fed. R. Evid 201(b)(2).

2012, by the Juvenile Court of Rutherford County, Tennessee, Brandon was declared the natural father of R.M. (D.E. 11-2.) The mother of the child was therein awarded a judgment against Plaintiff for retroactive support dating back to the child's birth and an immediate income/wage assignment. On August 12, 2021, Judge Little entered an order establishing Brandon as the natural father of K.D. by default and directing him to pay child support by wage assignment. (D.E. 11-3.) In October 2022 and March 2025, Judge Little entered orders directing Plaintiff to pay child support and arrearages by wage assignment with respect to P.C. and K.D. (D.E. 11-4 through 11-7.)

Plaintiff disputes the validity of the orders on the grounds that he did not apply for DHS services, agree to any parental responsibility contract, or consent to becoming the legal father of any of the Children. He alleges that Child Support Services misrepresented settlement offers as court orders and fraudulently induced him into child support obligations to which he did not consent. He also avers that DHS used these child support orders as the basis for liens placed against him and garnishment of his wages after he failed to pay the ordered child support. The garnishment continued even after Brandon advised Duck that he did not owe a debt to DHS. When Plaintiff requested the matters be closed, Duck refused. Eventually, Brandon was arrested and had to pay $2,000 to DHS for his release. He lost his job as a result. As noted *supra*, the complaint sought a declaration that Duck violated his constitutional rights and a preliminary and permanent injunction prohibiting Defendant from collecting further child support. He also asked this Court to "disestablish paternity" (D.E. 1 at PageID 24), close his DHS case, remove related information from credit reporting agencies, refund the child support obligations he has already paid, and award compensatory and punitive damages.

Thus, while Brandon attempts to frame his allegations as constitutional, statutory, and common-law claims, they all are, as the magistrate judge concluded, at their core challenges to the orders and enforcement actions of the state courts. This Court's review of these claims would create just the type of entanglement with questions of state family law the domestic relations exception was designed to prevent. The exception therefore applies. *See Greenberg v. Slatery*, No. 22-5886, 2023 WL 2771640, at *2 (6th Cir. Mar. 28, 2023) (district court did not err in finding exception applied to claims, although cloaked in the language of constitutional torts, attacking the validity of state court judgments in domestic proceedings and seeking termination of child support payments); *Evans v. Klaeger*, 12 F. App'x 326, 327 (6th Cir. 2001) ("While [plaintiff] attempts to assert civil rights claims, his complaint clearly questions the underlying domestic relations issues by challenging a[ state] court child custody decision"; thus, the domestic relations exception applied). Upon its finding that this Court lacks subject-matter jurisdiction to hear this matter based on the domestic relations exception to federal jurisdiction, the undersigned does not reach Plaintiff's remaining objections.

For the reasons articulated herein, the R&R is ADOPTED, the motion to dismiss the complaint is GRANTED, the remaining pending motions are DENIED as moot, and this case is DISMISSED. Judgment shall enter.

IT IS SO ORDERED this 21st day of September 2026.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE